May it please the court, good morning. I am Vernon Graneman, appointed pro bono counsel for petitioner, amicus counsel in this case. Also appearing with me at counsel table is Joseph Segenza, who is counsel for petitioner. To begin with, I'd like to reserve two minutes for rebuttal, if that's permitted. And our amicus brief focused on the interpretation of what we believe is the applicable regulation here, 8 CFR 1240.11c. And so I will focus my comments on that and respond to any questions that the court has. And we'll defer to Mr. Segenza for other issues that were raised in petitioner's opening brief. The issue as we see it is really whether the record before the immigration judge triggered the obligation to advise the petitioner of her right to apply for asylum because she had expressed fear of harm or persecution. We, there's much debate back and forth in the brief with respondent about exactly how to interpret that section. And in fairness, there is little guidance yet in case law as to exactly how to interpret the particular duty under subsection c when there is an obligation to notify the petitioner or the alien of the right to seek asylum. However, this court in another portion of section 1240.11 subsection a has interpreted similar language and I think has applied in the Ran Enriquez case, I think applied a practical and reasonable approach to interpreting the language of the section. But just to review, in this particular case when the petitioner's application came before the immigration judge, the record in the case reflected that there was an asylum application in the file. It was the husband's application and petitioner was listed as a derivative applicant at the time. That was acknowledged very early in the administrative proceedings back in 1999. Yet when it came time to rule on petitioner's application and eventually her consent to removal, there was no mention, no discussion at all on the record with the immigration judge of the fact that there wasn't. Speaking, the husband's application was on the table, was specifically being withdrawn. The same counsel was there. There's no realistic possibility that filing for asylum and she's watching her husband's application be withdrawn. So although I understand the sense of the argument, it seems in practical terms the notion that petitioner was unaware and needed to be advised is not particularly applicable to this case. I understand the argument and the facts are what the facts are. But the reality is that the cases were treated separately. The judge took pains to separate husband's case from wife's case. Wife's case proceeds first. Petitioner's case proceeds first. There is in the record an asylum application with her as a derivative applicant. It seems to me there's no question that there was, it's not like the court had to ferret through a lengthy record to figure out whether or not asylum was an issue here and whether there had been some expression of concern. And it wasn't random expression of concern. It was specific to her husband's application. It was right there in the file. Well, first of all, go ahead. Please go ahead. Well, I would say she had sought voluntary departure. She had withdrawn her application for cancellation. I don't see how the immigration judge should have been put on notice that she feared persecution. Can you respond to that? I, the best way I think I can respond to it, your honor, is to say that if you go back to what you did in the, this court did in the Moran and Riquez decision, the court took the view that based on a fair review of the record before, by an experienced immigration judge, you make a reasonable inspection of the record to be advised. In this case, I think at a minimum, it at least warranted addressing the issue with the petitioner at the hearing. The, the, the judge did take pains to talk about the withdrawal of the husband's application in the husband's separate case that happened concurrently immediately after a petitioner's case was considered. I, I don't think it is imposing an undue burden. And indeed, in regulation that says where there is this awareness of an expression of fear in the record, that the immigration judge has a duty to advise the applicant, the alien of its right to seek asylum. It certainly was present and obvious in the record that, that such an expression of fear had been made applicable to this particular person. Only in the sense that she had a derivative application. She, she had done nothing to express fear on her own part. Right. But, but, but I think if you, if in fairness, I don't think the, the implication of, of your question, of your comment, Your Honor, is that there should be a very high standard to trigger this responsibility on, on the behalf of the immigration judge. And, and I really don't think that, that, that it is warranted or is consistent with past decisions of this court respecting when an immigration judge has a duty to advise an alien of certain benefits to avoid deportation. So I, I, it, it seems to me that, that, that needs to be taken into account as to what, what, what standards should be applied here. It isn't as though there needs to be an ultimate decision on the merits. It's simply if the record fairly reflects that, that there is an expression of fear of persecution or harm, that you simply have the obligation to the alien to, that, that they have a right to apply, you don't need to adjudicate the issue on the merits. Two questions. First, she was represented by counsel. She was, Your Honor. And could she have applied for asylum or would she, was, was she beyond a one-year period? I'm going to defer to my co-counsel on that because her, I, I'm, I'm just not particularly familiar with that. I, I, I, these proceedings started in 1999. It's a practical matter because she was withdrawing her application for cancellation of removal because of an interruption in what otherwise would be a 10-year period. It's plain, we're well past, well beyond the one-year point. And that's just how the facts are. Yes, they are. So. Did you want to have your co-counsel speak, Mr. Argyle? It's very low on time. I, I am, I, I, I think, Your Honor, we'll just take our two minutes. If you have any other questions, I will address them. Otherwise, I'll defer to Mr. Segenza if he has any comments. Good morning. May it please the Court, Joe Segenza for Petitioner. As Mr. Groneman has ably articulated this morning, we have a novel issue here. The novel issue is the procedural rights of derivative asylum applicants and to what extent they have a say in withdrawal of an asylum application, and what is the proper role of the I.J. in assuring that the interests of derivatives are protected. Well, the I.J. here did say quite specifically that if you take voluntary departure, that's all there is. There's nothing else. Yes. The asylum application was, as Judge Clifton said, on the table. I mean, it was obvious that it was being withdrawn. It was, Your Honor. Counseled. It seems like that while there may be difficult cases, I'm not sure this is one of them. Well, it's significant to note, and I believe Mr. Groneman pointed out to the Court, that the colloquy between the I.J. and the female Petitioner occurred before the male Petitioner had withdrawn his asylum application and had engaged in a colloquy. And so in that sense, we would say that's true. But I recall, although right at the moment I'm not putting my hands on it, seeing a reference so that it was known by everybody in the room that that was how the – how it was going to unfold. So it's true that his hearing, because they were separated, came later, and the formal withdrawal came later. But the formal withdrawal was not a surprise to anybody, because it was already known that's what was going to happen. Well, I believe the I.J. in the record indicated that she would get to his withdrawal of the asylum application later after the – What about the timeliness issue? I mean, would it be your position that the pendency of the derivative asylum application essentially was an extraordinary circumstance that would weigh the one year? Yes, exactly. And we – we submit that it's not – this case is not about ultimate relief or likelihood of success on the merits. It's simply about protecting derivative applicants' rights in this unique situation. Again, it's a novel issue. And it – all we're saying is that there – it's incumbent upon the I.J., pursuant to the reg, when there is an indication that she – that female may have – female Petitioner may have an independent claim to asylum through the declaration and the – the declaration and the application for male Petitioner. Are you suggesting that – I mean, the fact that she's counseled makes this all seem ordinarily unnecessary. But are you suggesting that there was some possible conflict because it was representing both of them or some reason why she needed to be specially protected despite the fact that she was represented? Not necessarily. The reg does not apply to this in terms, because in terms she did not indicate any fear on her own behalf, and it doesn't seem to directly apply. But the question is whether there is some sort of due process-y right that arises. That's what we would submit, Your Honor. And it's not an undue consumption of time for the I.J. simply to inquire to the female Petitioner that her husband was withdrawing his asylum application, that his declaration indicated that there was fear on the part of not only the male Petitioner but also his family, including the female Petitioner, that they were afraid to return to Mexico. And if the I.J. had simply followed up with a couple of questions to the female Petitioner asking whether she also had such a fear, and if she did, that she was eligible to apply for asylum. Counsel, you cite Morgan, Enrique v. INS in support of the argument that some other person can trigger notice requirements under 124011C1. Isn't that case distinguishable? Because the section in question there was not 124011C1 but 124011A2, which is inapplicable here. Yes, and I believe Mr. Groneman has discussed that, Your Honor. I believe he said by analogy it's incumbent upon the I.J. under 124011.C to similarly advise female Petitioner of her potential eligibility for asylum, especially when there's an indication in the record that she may have a fear herself of returning to Mexico. So by analogy, we would submit that the I.J. similarly has a – it's incumbent upon the I.J., rather, just to engage in a brief colloquy with the female Petitioner to inquire whether or not she, in fact, does have an independent claim. Okay. Thank you very much, Counsel. Thank you. And we will give you some time for that, a minute or so. May it please the Court. Jamie Dowd on behalf of the Respondent Attorney General. The Amicus Council states that there's a high standard, I guess, that's supposed to be imposed on the immigration judge in this circumstance under the regulation 1240.11C1. However, it's not a high standard. The regulation actually just states that immigration judges need only inform aliens of their right to apply for asylum. If the alien expresses a fear of persecution or harm. In this case, Mrs. Corona never, as the Court pointed out, never expressed a fear of persecution or harm. Additionally, as the Court pointed out, she was asked affirmatively by the immigration judge after her husband expressed his – that he wanted to withdraw his asylum application. She was asked affirmatively whether – once she stated she wanted to withdraw her cancellation application, if she understood that the only relief available to her was voluntary departure. To which she answered affirmatively. She was then qualified for voluntary departure and asked if she would leave the United States if she was granted that relief. And she said yes. So a due process claim – aliens in due process proceedings need only receive a full and fair hearing. And it seems clear here that she was provided a full and fair hearing and that she was – once she expressed her desire to withdraw all applications for relief that she personally had pending and was advised that no other relief was granted, that that was the case and accepted the relief that was granted. Do we know why the husband withdrew his asylum claim? We don't know why. However, it appears that he affirmatively applied for asylum, had his case – or was interviewed by an asylum officer, and then the case was forwarded to immigration court, which allowed him then the opportunity to apply for cancellation of removal. But I can't speculate as to why he ultimately withdrew it. But he did proceed on – and he was represented by counsel, so one can only assume that he proceeded on the strongest of the applications. And they were both represented by the same counsel. Correct. I would also like – It is clear, I gather, that the regulation applies whether or not there's counsel. That's correct, Your Honor. Even to pro se applicants. Also to non-pro se applicants. To any applicant in immigration court who expresses a fear of persecution, then the immigration judge should inform the alien that they have a right to apply for asylum. I would like to point the Court's attention, as we briefed in our reply brief, to its decision in Valencia, where the Court clearly states there's no requirement that an alien be advised of the availability of relief from deportation where there's no apparent eligibility to receive it. Furthermore, because Mrs. Corona seems to only rely on her due process claim here, she has to show that she was prejudiced in some way in order to support such a claim. However, which means she has to, at a minimum, show that she had a basis for an asylum application, to show that she was prejudiced by a failure to have one adjudicated. But she's never expressed any fear of persecution, neither before the immigration judge nor the board on appeal, nor in her motion for remand. In fact, she did return to Mexico for about five months in 1994, of which the immigration judge was aware, which actually was the reason why she withdrew her cancellation application, because she had spent a significant amount of time in Mexico so as to break her physical presence in order to be eligible for that relief. So she never submitted an asylum application, never offered a proffer that she had a fear of persecution, never identified such a fear, and, in fact, never referenced a fear for any agency, whether it was IJ or the board. Including now? Including before this court. She has never expressed in any of the, I believe, three, maybe four briefs that she filed before the board, what claims she would have presented had she been able to present one. So there's clearly no showing of prejudice to support any sort of due process violation here. Unless the Court has further questions. Thank you very much. Thank you. Thank you, Your Honor. I'll take just one. What about the prejudice issue? Excuse me. What about the prejudice issue? Your Honor, I don't think that prejudice applies in this instance. The cases cited by Respondent deal with collateral attacks on prior deportation orders after someone has come back in illegally and been arrested and they're now challenging the original proceedings. No, that's not true. Well. A due process, in general, there has to be a showing of prejudice. But at least in the case, in the cases we've cited, buoy and argument, which are, I think, more analogous, because they're direct petitions to the Board of Immigration Appeals and to this court, the standard of prejudice that's discussed is very low. We've cited this in the brief. But essentially, if the violation of the right affects the outcome of the proceeding, it's a very – it's a much lesser standard than is discussed. But has she ever said anywhere what her assigned claim might be? No, not that I'm aware of. There's certainly nothing in the record, Your Honor, that she's ever expressed that. So what would the remedy be if she were to prevail? To simply remand this back to the immigration judge to have her properly advised of what her rights are to seek asylum. And then it may be that she won't seek asylum because she has no claim. It's entirely possible. We don't get to the merits of the claim, Your Honor. That's correct. Perhaps. She may choose whether or not to file the asylum application. This all comes up directly. There was no motion to reopen file with any showing of what she would have said if she had been advised. That is the record before the Court, Your Honor. There's nothing in the administrative record. Is that the way the other cases have come up, the other cases that deal with a failure to give advisement? Well, there's nothing that we found that deals with this particular section and the advisement on this particular obligation. But certainly in the apparent eligibility case, the one case with Senator 1240.11a, the Moran Enriquez case, that was a combination motion to reopen. Our point here, though, is that this is sort of a legal procedural issue that should have been addressed by the immigration judge. And I think it confuses us. It's not, in fact, a direct violation of any regulation, right? And it would have to, therefore, be on a broader due process ground. Is that much correct? Well, I don't think I would agree with that, Your Honor, because if under subsection C, it doesn't – there's no requirement in the section. There's nothing that says exactly how the alien has to express fear of harm or persecution. It's not detailed. And to adopt this Court's language in the Moran Enriquez case, where the government was arguing for a relatively strict interpretation of how that regulation should be applied, the Court said we would not read the regulation so grudgingly. And I'd urge the Court to consider that same analysis in this particular case, because it's an important right to seek asylum. And I think – I don't think the obligation – I don't think we're imposing a high standard and a difficult burden on immigration judges where they see something obvious in the record that they simply point it out and address it. Thank you very much. Thank you, Your Honor. Thank you, counsel. The case of Verona Vasquez is submitted.
judges: D.W. Nelson, Berzon, Clifton